**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL SIMONOVICH,

      Plaintiff,

      v.

UNITED RENTALS, INC. & UNITED
RENTALS (NORTH AMERICA) INC.,

      Defendants.

Civil Action No. 25-15142 (ES) (CF)

OPINION

**SALAS, DISTRICT JUDGE**

Before the Court is a motion to compel arbitration filed by Defendants United Rentals, Inc. and United Rentals (North America), Inc. (together, "Defendants"). (*See* D.E. No. 11 ("Motion" or "Mot."); *see also* D.E. No. 11-2 ("Mov. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's Motion to Compel Arbitration is **GRANTED**.

### I.    BACKGROUND

#### A.    Factual Allegations

Michael Simonovich ("Plaintiff") alleges that Defendants "unlawfully demoted, retaliated against and wrongfully terminated [him] in violation of the New Jersey Conscientious Employee Protection Act." (D.E. No. 4 ("Amended Complaint" or "FAC") ¶ 1). Plaintiff has worked for Defendant United Rentals—an equipment rental company—at their Elmwood Park, New Jersey location since May 2019. (*Id.* ¶ 7–9). On May 22, 2019, the parties entered into an employment agreement ("Agreement"). (*Id.* ¶ 17). "In February 2024, Defendants promoted Plaintiff from his

role as an Outside Sales Representative "to a Key Account Manager position in the Defendants' Fluid Solutions Division in Elmwood Park, New Jersey." (*Id*. ¶ 19). In his new role, Plaintiff "oversaw and reviewed all Defendants' fluid solutions projects in New Jersey, New York, and Connecticut that required design and engineering submittals." (*Id*.). Plaintiff alleges that he has been a "dedicated and loyal employee" and that Defendants have "profited handsomely from Plaintiff's rainmaking and his labors." (*Id*. ¶¶ 26–27). For instance, Plaintiff claims he brought with him to United Rentals forty of his "pre-existing, corporate customers." (*Id*. ¶¶ 28).

In or around 2022, the New York Department of Transportation awarded Tully Construction—one of Defendants' customers—"a public contract to increase the traffic capacity of the Van Wyck Expressway in Queens, New York . . . and to improve vehicle access to John F. Kennedy International Airport in Queens, New York." (*Id*. ¶ 32). Plaintiff "originated and negotiated" a subcontract between United Rentals and Tully Construction, (*id*. ¶ 37), pursuant to which "United Rentals agreed to rent to Tully Construction 16 pumps, each 6½ feet wide and 16 feet long, to clear water out of the Van Wyck's sewer system[,]" (*id*. ¶ 35).

Plaintiff alleges that, "for at least the first three months that Tully Construction engaged in construction on the Van Wyck's sewer system, United Rentals' . . . pumps were not operating." (*Id*. ¶ 44). Even though the pumps remained inoperable, Plaintiff claims that Defendants "unlawfully charged [Tully Construction] rental fees of approximately $800,000" during that three-month period. (*Id*.). Plaintiff believed that this behavior violated both the subcontract and the New York False Claims Act. (*Id*. ¶ 45). "[B]eginning by December 2023 and continuing through at least June 2024, Mr. Simonovich repeatedly disclosed (both verbally and in writing) to United Rentals' supervisors, that he objected to, and refused to participate in, United Rentals' unlawful charging, to Tully Construction, of hundreds of thousands of dollars of rental fees for

United's . . .pumps in the Van Wyck's sewer system even though United Rentals' . . . pumps were not operating." (*Id*. ¶ 47).

Plaintiff alleges that, "[f]or months, United Rentals disregarded and/or wrongly rejected [his] complaints" and "began retaliating against him." (*Id*. ¶ 48). For example, Plaintiff claims that Defendants issued him a "Warning Disciplinary Action," violated their own policy by refusing to conduct an internal investigation of Plaintiff's complaints, and demoted Plaintiff from Key Account Manager to an Outside Sales Representative. (*Id*. ¶¶ 49–53). Plaintiff alleges that Defendants' unlawful retaliation culminated in his termination on February 12, 2025. (*Id*. ¶ 66).

### B.    Procedural History

Plaintiff filed the instant action on September 1, 2025 against Defendants. (*See generally* D.E. No. 1). The following day, Plaintiff filed an amended complaint. (*See generally* FAC). On October 29, 2025, Defendants moved for an order "(1) compelling Plaintiff Michael Simonovich . . . to arbitrate his claims asserted in this action in accordance with the May 22, 2019 Employment Agreement by and between Defendants and Plaintiff . . . and the Federal Arbitration Act, 9 U.S.C. §§ 2–4; (2) staying this action pending arbitration of Plaintiff's claims pursuant to 9 U.S.C. § 3; and (3) granting such other and further relief as the Court deems just and proper." (Mot. at 1). On November 17, 2025, Plaintiff opposed Defendants' Motion, (*see* D.E. No. 18 ("Opp. Br.")); on November 24, 2025, Defendants replied, (*see* D.E. No. 20 ("Reply Br.")).

### II.    LEGAL STANDARD

"Before compelling a party to arbitrate pursuant to the [Federal Arbitration Act (the "FAA")], a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). A court is required to order that the parties

proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). "When the very existence of . . . an [arbitration] agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 775 n.5 (3d Cir. 2013) (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 112 (3d Cir. 2000). Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## III.    DISCUSSION

Defendants argue that this Court must compel arbitration under the FAA because (i) the parties agreed to arbitrate via the May 22, 2019 Agreement; and (ii) Plaintiff's claims fall squarely within the scope of the Agreement's arbitration clause ("Arbitration Provision"). (*See generally* Mov. Br.). In relevant part, the Arbitration Provision reads as follows:

> 5 (a) Consent to Personal Jurisdiction. Employee hereby agrees that the interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut and Employee hereby consents that such courts be granted exclusive jurisdiction for such purpose.
>
> (b) Waiver of Jury Trial. Employee and the Company hereby waive a trial by jury in all legal disputes brought pursuant to this Agreement. . . .
>
> (d) Arbitration of Certain Claims by Employee.
>
> (i) Any and all claims by Employee relating to any matter arising during or after the employment of the Employee by Company or in

> connection with the cessation of said employment shall be resolved exclusively by arbitration conducted by one arbitrator in accordance with the Employment Arbitration Rules and Mediation Procedures established by the American Arbitration Association (AAA). The Company will provide a copy of these Rules to Employee on request. The decision of the arbitrator will be final and binding on both parties. (Note that this arbitration provision shall not apply to any claims by the Company against Employee or any matters within the scope of Section 5(a)).
>
> (ii) The claims and disputes to be arbitrated under this Section 5(d) ("Arbitrable Claims") include, without limitation, disputes or claims arising under (A) federal, state and local statutory or common law (examples include, but are not limited to, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, and the Americans with Disabilities Act, (B) the law of contract and (C) the law of tort.
>
> (iii) Each Arbitrable Claim shall immediately expire unless Employee begins arbitration for the claim no later than the first anniversary of the day on which the Employee learned or reasonably should have learned that he or she may have such claim. . . .
>
> (e) Attorneys' Fees. If Employee breaches any of the covenants set forth in this Agreement or brings any action challenging this Agreement or its enforcement, Employee agrees to pay all costs (including reasonable attorneys' fees) incurred by the Company in establishing that breach and/or otherwise defending or enforcing any of the covenants or provisions of this Agreement.

(Mov. Br.; *see also* D.E. No. 11-3 ("Ex. A.") at 9–10). In response, Plaintiff does not appear to dispute that the parties entered into an agreement to arbitrate or that the instant matter falls within the ambit of that agreement.[1] Instead, Plaintiff argues that the Arbitration Provision is (i) unenforceable because it failed to adequately explain to Plaintiff the waiver of his rights contained

---

[1] For posterity's sake, the Court notes that Plaintiff's claims do, indeed, fall within the scope of the Arbitration Provision. (*See* Ex. A. at 9 ("Any and all claims by Employee relating to any matter arising during or after the employment of the Employee by Company or in connection with the cessation of said employment shall be resolved exclusively by arbitration.")). Plaintiff's claims for retaliation, (Count I), wrongful termination, (Count II), and defamation/libel, (Count III), all clearly "relat[e] to . . . matter[s] arising during or after" his employment with Defendant—namely, that Plaintiff "repeatedly disclosed (both verbally and in writing) to United Rentals' supervisors, that he objected to . . . United Rentals' unlawful charging, to Tully Construction, of hundreds of thousands of dollars."

therein; (ii) procedurally and substantively unconscionable; and (iii) unenforceable as a matter of public policy. (*See generally* Opp. Br.). The Court addresses each argument in turn. First, however, the Court considers the applicable standard of review and proper choice of law to resolve the Motion at bar.

### A.     Applicable Standard of Review

As an initial matter, when a court is asked to decide whether a valid arbitration agreement exists, it must first determine whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Guidotti*, 716 F.3d at 776. "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Id.* (quoting *Somerset Consulting, LLC v. United Cap. Leaders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). Further, even where an agreement to arbitrate is neither explicitly mentioned on the face of the complaint nor attached to it as an exhibit, a court may properly consider the agreement under Rule 12(b)(6) if it is integral to or relied upon in the complaint or has been incorporated by reference into the complaint based on a plaintiff's allegations. *See, e.g.*, *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014); *George v. Midland Funding, LLC*, No. 18-15830, 2019 WL 2591163, at *3 (D.N.J. June 25, 2019); *Stacy v. Tata Consultancy Servs., Ltd.*, No. 18-13243, 2019 WL 1233081, at *5 (D.N.J. Mar. 14, 2019). For example, some courts in this Circuit have found an arbitration agreement to be incorporated by reference in a complaint where the underlying claims are based on agreements that contain the disputed arbitration provisions or where the complaint references an agreement that contains the arbitration provision. *See, e.g.*, *CardioNet, Inc.*, 751 F.3d at 168 n.2.; *George*, 2019 WL 2591163, at *3.

The Third Circuit has provided that it is inappropriate to consider a motion to compel arbitration under a Rule 12(b)(6) standard in two instances: (i) "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate," or (ii) "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776. Under either scenario, "the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Id.* at 774 (internal quotation and citation omitted). "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at 776; *see Discovery House v. Advanced Data Sys. RCM, Inc.*, No. 19-21602, 2020 WL 6938353, at *4 (D.N.J. Nov. 25, 2020). Moreover, "[a] disagreement as to arbitrability is not sufficient in itself to warrant application of the summary judgment standard, because a motion to compel arbitration is necessarily predicated by the parties' disagreement to arbitrability." *Lawson v. City of Philadelphia*, No. 18-1912, 2019 WL 934976, at *2 (E.D. Pa. Feb. 25, 2019) (citing *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 578 (3d Cir. 2017)). In *Silfee*, the United States Court of Appeals for the Third Circuit clarified that, even if the parties dispute the enforceability of the arbitration agreement at issue, the Rule 12(b)(6) standard nevertheless applies where the plaintiff argues that the arbitration agreement is unenforceable for "pure legal" reasons. *See Silfee*, 696 F. App'x at 578–79 (citing *Guidotti*, 716 F.3d 776); *see also Lawson*, 2019 WL 934976, at *2 ("In *Silfee*, there was a concededly authentic arbitration provision, and plaintiff argued that the arbitration agreement was unenforceable for 'pure legal' reasons. He did not produce additional facts to place the agreement to arbitrate at issue and did not seek additional discovery to do so. The case was remanded to the district court for application of Rule 12(b)(6), as opposed to the summary judgment standard that had been

applied by the district court.").

Here, the parties appear to have no disagreement as to whether the Agreement included the Arbitration Provision. (*See* Opp. Br. at 1 ("Defendant moves to compel arbitration pursuant to an Employment Agreement which contains an arbitration provision.")). Moreover, Plaintiff references the Agreement in his Amended Complaint: "United Rentals, Inc., United Rentals (North America), Inc., and Mr. Simonovich entered into an Employment Agreement dated May 22, 2019." (FAC ¶ 17). Defendants additionally attached the May 22, 2019 Employment Agreement to their Motion. (*See generally* Ex. A). The parties do not dispute that Exhibit A is an accurate representation of the May 22, 2019 Agreement referenced in Plaintiff's Amended Complaint, nor is there any disagreement as to whether Plaintiff signed the Agreement. (*See generally* Opp. Br.; Reply Br.)); *see also Albany Cnty. Fasteners v. Epicor Software Corp.*, No. 18-17214, 2019 WL 397986, at *2 (D.N.J. Jan. 31, 2019) ("Though the Agreement is not attached to the Complaint, it is referenced throughout same. Thus, as a threshold matter, this Court will apply the Rule 12(b)(6) standard in deciding the instant motion because arbitrability is 'apparent, based on ... documents relied upon in the complaint[.]'" (quoting *Guidotti*, 716 F.3d at 776)).

Although Plaintiff disputes the enforceability of the Arbitration provision, (*see generally* Opp. Br.), "Plaintiff has not put the Agreement to arbitrate at issue, nor has Plaintiff identified any other disputed facts relative to the disposition of Defendant[s'] motion[,]" *Romero v. Ctr. for Excellence in Higher Educ., Inc.*, No. 21-1124, 2023 WL 172229, at *2 (D. Del. Jan. 12, 2023), *report and recommendation adopted*, No. 21-1124, 2023 WL 2662330 (D. Del. Mar. 28, 2023). Put another way, Plaintiff raises "pure legal" objections to the enforceability of the Arbitration Provision which do not require additional discovery; indeed, neither party requests any. *Silfee*, 696 F. App'x at 578–79; *see also Scarcelle v. Cardo Windows, Inc.*, No. 23-2051, 2024 WL

8

150330, at *3 (E.D. Pa. Jan. 11, 2024) ("[Plaintiff] has not shown that the Complaint and supporting documents are unclear regarding the agreement to arbitrate, nor has [plaintiff] responded with additional *facts* sufficient to place the relevant contractual provisions in issue arguing instead that the 2011 Subcontractor Agreement is not enforceable as a matter of law."). Moreover, as noted by the Honorable Judge Fais, U.S.M.J., the "[p]arties agree there is no discovery needed relating to the question of arbitrability." (*See* D.E. No. 26). The Court accordingly decides Defendants' Motion pursuant to Rule 12(b)(6).[2]

### B.    Choice of Law

At the outset, the Court considers which state's substantive law governs. *Frederick v. Law Office of Fox Kohler & Assoc. PLLC LLC*, 852 F. App'x 673, 676 (3d Cir. 2021) (discussing the circumstances under which a choice of law question must be addressed in a case involving enforcement of an arbitration agreement). Here, (i) the Agreement contains a forum selection clause dictating that "interpretation and enforcement of the provisions of this Agreement shall be

---

[2]    In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). Thus, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)). The Court accordingly considers Exhibit A as a document incorporated by reference to the Amended Complaint, as explained *infra*.

resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut[,]"[3] (Opp. Br. at 3; Ex. A at 9); (ii) Plaintiff is a citizen of New Jersey; (iii) Defendants are both corporations incorporated in Delaware and with their principal place of business in Connecticut; and (iv) Plaintiff brought suit in a federal forum within the state of New Jersey.

A choice of law question arises only when a "true conflict" exists between the potentially applicable state laws on contract formation. *Vasadi v. Samsung Elecs. Am., Inc.*, No. 21-10238, 2021 WL 5578736, at *7 (D.N.J. Nov. 29, 2021) (citing *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006)). "A true conflict exists when the application of one or another state's law may alter the outcome of the case." *Frederick*, 852 F. App'x at 676. The parties to this suit have raised no conflict between the law of contract formation in Connecticut (where the Agreement designates disputes be litigated) and New Jersey (the forum state). Indeed, Plaintiff and Defendants both rely on New Jersey law in their briefs, and Defendants specifically argue that no conflict exists:

> As stated previously, the Agreement specifies that the that the Agreement shall be construed according to the laws of Connecticut without regard to its conflict of laws principles. . . . As Plaintiff was based in New Jersey, New Jersey law is cited solely to show that New Jersey law also supports this matter being compelled to arbitration.

(Mov. Br. at 9 n.3). Thus, on this motion to compel arbitration, the Court applies New Jersey

---

[3]    Neither Plaintiff nor Defendants have argued that, based upon this forum-selection clause, this Court should transfer the instant matter to the District of Connecticut. (*See generally* Mov. Br.; Opp. Br.; Reply Br.). Any transfer pursuant to the forum-selection clause would occur under 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Because Section 1404(a) is permissive, and because neither party has requested transfer, this Court declines to do so *sua sponte*. In the interest of judicial efficiency, it shall instead adjudicate the merits of the Motion.

contract law to analyze whether a valid arbitration agreement exists.[4]  *See, e.g.*, *Vasadi*, 2021 WL 5578736, at * 7; *see also Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am.*, 739 F. Supp. 3d 259, 263 (D.N.J. 2024) (quoting *Marino v. Brighton Gardens of Mountainside*, 697 F. Supp. 3d 224, 299 (D.N.J. 2023)) (citation modified) (collecting cases).

## C.    Enforceability of the Arbitration Provision

Plaintiff first argues that the Arbitration Provision is unenforceable because it violates the requirement "that an arbitration agreement clearly explain to an employee that he is waiving his right to have claims adjudicated in court."  (Opp. Br. at 4 (citing *Easterday v. USPack Logistics LLC*, No. 15-7559, 2022 WL 855583, at *3 (D.N.J. Mar. 23, 2022))).  Plaintiff points to several perceived issues with the Provision, beginning with Section 5(a):

> 5 (a) Consent to Personal Jurisdiction. Employee hereby agrees that the interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut and Employee hereby consents that such courts be granted exclusive jurisdiction for such purpose.

(Ex. A at 9).  Plaintiff argues that, while a lawyer would recognize that Section 5(a) "refers only to judicial proceedings concerning interpretation and enforcement of the Agreement or threshold issues of arbitrability[,]" a "reasonable layperson . . . would have no basis to infer that the initial command to litigate in Connecticut courts does not apply to the employee's employment-related claims, or that the Provision is attempting to separate arbitrability issues from the merits."  (Opp. Br. at 5–6).  Further still, Plaintiff argues, "the Arbitration Provision does not explain—in terms an average employee could understand—what arbitration is, how it differs from a court

---

[4]    "Under New Jersey law, a 'valid and enforceable' contract has a fixed set of basic ingredients: offer, acceptance, and consideration." *Stabile v. Macy's, Inc.*, 751 F. Supp. 3d 429, 433 (D.N.J. 2024) (citing *Goldfarb v. Solimine*, 245 A.3d 570 (N.J. 2021)).

proceeding, or what rights the employee is giving up." (*Id*. at 6). And "[a]lthough §5(b) contains a waiver of 'trial by jury,' that language, without any further explanation, would naturally lead a layperson to believe simply that a judge—not a jury—would hear the case." (*Id*.). Plaintiff concludes that the Arbitration Provision thus "misleads the reader into believing that court adjudication remains the default, and its language fails to disclose that arbitration eliminates the employee's right to litigate his claims before a judge." (*Id*.).

Defendants reply that the Agreement adequately explains that Plaintiff is agreeing to arbitrate his claims. (*See* Reply Br. at 1–4). Defendants argue that, "'[w]hen a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected.'" (*Id*. (first quoting *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 690 (N.J. 2010); then citing *New Jersey Mfrs. Ins. Co. v. Sunrun Inc*., No. 24-6441, 2024 WL 5002922, at *5 (D.N.J. Dec. 6, 2024))). Here, "in executing the Agreement, Plaintiff agreed that it was a binding legal contract, he could review it with an attorney, and that he read and understood its term[s]." (*Id*. at 2). Further still, Defendants argue, "Plaintiff cannot credibly claim to be a rainmaking negotiator of commercial agreements yet also claim to not understand the terms of his own Employment Agreement." (*Id*. at 3).

To be sure, an arbitration provision must contain "clear and unambiguous" waiver-of-rights language: "that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 315 (N.J. 2014); *see also Moon v. Breathless Inc*, 868 F.3d 209, 214 (3d Cir. 2017). In other words, an arbitration provision must both "clearly indicate[] that the parties' disputes would be subject to binding arbitration, and that Plaintiff waived his right to a jury trial regarding those disputes." *Solecitto v. Axon Enter., Inc.*, No. 23-23125, 2025 WL 2803382, at *5 (D.N.J. Oct. 2, 2025); *see*

*also Easterday*, 2022 WL 855583, at *7 ("When a contract contains a waiver of rights, that waiver must be 'clearly and unmistakably established.'" (quoting *Atalese*, 99 A.3d at 314). However, "[n]o magical language is required to accomplish a waiver of rights in an arbitration agreement." *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016).

Here, "the Court finds that the provision clearly indicated that all claims related to his employment with Defendant would be subject to binding arbitration." *Solecitto*, 2025 WL 2803382, at *5. The Provision states that "Employee and the Company hereby **waive a trial by jury in all legal disputes** brought pursuant to this Agreement[,]" and that "***[a]ny and all*** claims by Employee relating to any matter arising during or after the employment of the Employee by Company or in connection with the cessation of said employment **shall be resolved exclusively by arbitration**." (Ex. A at 9–10); *see, e.g.*, *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 875 & 879 (2002) (upholding arbitration clause stating that "all disputes relating to [the party's] employment . . . shall be decided by an arbitrator" and that party "waiv[ed] [her] right to a jury trial"); *see also Atalese*, 99 A.3d at 314 ("Our courts have upheld arbitration clauses phrased in various ways when those clauses have explained that arbitration is a waiver of the right to bring suit in a judicial forum. For example, in *Martindale, supra,* we upheld an arbitration clause because it explained that the plaintiff agreed 'to waive [her] right to a jury trial' and that 'all disputes relating to [her] employment. . . shall be decided by an arbitrator.'" (quoting *Martindale*, 800 A.2d at 875 & 879)).

Neither is the Court persuaded by Plaintiff's contention that "[a]lthough §5(b) contains a waiver of 'trial by jury,' that language, without any further explanation, would naturally lead a layperson to believe simply that a judge—not a jury—would hear the case." (Opp. Br. at 6). As Defendants argue, New Jersey courts have found similar language adequate several times before.

*See, e.g.*, *Defina v. Go Ahead & Jump 1, LLC*, No. A-1861-17T2, 2019 WL 2622074, at *5 (N.J. Super. Ct. App. Div. June 13, 2019) (citation modified) ("[T]he clause in *Martindale* expressly stated that the plaintiff is waiving her 'right to a jury trial.'  By referring to a jury trial, the clause informed the plaintiff, in a 'general and sufficiently broad way,' that she was 'giving up her right to bring her claims in court or have a jury resolve the dispute.'"); *Wigfall v. Denholtz Assocs., Inc.*, No. A-0046-09T1, 2010 WL 5173700, at *4 (N.J. Super. Ct. App. Div. Dec. 22, 2010) ("Moreover, the clause contained affirmative language waiving [plaintiff's] right to a jury trial, which bolsters a finding that an employee was on notice that all claims would be resolved through arbitration.").

Moreover—and as Defendants argue—the parties here are not "average member[s] of the public" and the Agreement at issue here was not a "consumer contract."  *See GAR Disability Advocs., LLC v. Taylor*, 365 F. Supp. 3d 522, 530 (D.N.J. 2019) (first citing *Atalese*, 99 A.3d at 313; then citing *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 199 A.3d 766, 775–78 (N.J. 2009)).  Indeed, Plaintiff alleges that, "by bringing in fluid solutions projects, [he] generated annual revenue of about $2.5 million to $4.5 million per year for United Rentals" and that he personally "originated and negotiated, on United Rentals' behalf, United Rentals' subcontract with Tully Construction."  (Compl. ¶¶ 29 & 37).  When he signed his own Employment Agreement, Plaintiff "represented . . . that []he understood the agreements and had had the opportunity to speak with an attorney."  *GAR Disability*, 365 F. Supp. 3d at 531.  "In short, this was very far from being a 'setting[] where a person would not be presumed to understand' that the right to a civil trial was being waived."  *Id.* (quoting *Kernahan*, 199 A.3d at 777); *see also Victory Ent., Inc. v. Schibell*, No. A-3388-16T2, 2018 WL 3059696, at *8 (N.J. Super. Ct. App. Div. June 21, 2018) (per curiam) ("Unlike the plaintiff in *Atalese*, plaintiffs were not average member[s] of the public.  VEI is a corporation and Pannaccione is an experienced businessman with interests in several commercial

14

operations." (citation modified)).  The Court thus declines to hold the Arbitration Provision unenforceable on the basis that it failed to unambiguously waive Plaintiff's rights.

### D.    Procedural and Substantive Unconscionability

Plaintiff next argues that the Arbitration Provision is both procedurally and substantively unconscionable.  (Opp. Br. at 7–9).  "The burden of proving . . . unconscionability lies with the party challenging the contract provision." *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 277 (3d Cir. 2004); *see also Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). "In evaluating claims of unconscionability, courts generally recognize two categories, procedural, or 'unfair surprise,' unconscionability and substantive unconscionability." *Harris*, 183 F.3d at 181.  Therefore, to establish unconscionability a plaintiff must show "that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Id.*; *see also OKLegal.com v. Meta Platforms, Inc.*, No. 25-2346, 2026 WL 850812, at *4 (D.N.J. Mar. 27, 2026).  An agreement must be both procedurally and substantively unconscionable for a court to declare it unenforceable. *Snowdy v. Mercedes-Benz USA, LLC*, No. 23-1681, 2024 WL 1366446, at *23 (D.N.J. Apr. 1, 2024).  The Court thus considers Plaintiff's arguments regarding procedural and substantive unconscionability each in turn.

***Procedural Unconscionability.***    Plaintiff argues that the Arbitration Provision is procedurally unconscionable because was presented to him "online, in extremely small and difficult-to-read type and required to be reviewed and executed electronically." (Opp. Br. at 7–8). Defendants respond that "Plaintiff's argument misrepresents the facts" because "Plaintiff agreed that: (1) he could print out and save the Agreement; (2) he could review the Agreement with an attorney; and (3) he read and understood the Agreement."  (Reply Br. at 5 (citing Ex. A)).

15

Moreover, "while New Jersey courts will sometimes consider font size of an agreement, as a federal district court pointed out, those holdings are in the context of a consumer contract governed by the New Jersey Plain Language Act, not an employment agreement." (*Id*. (citing *GAR Disability*, 365 F. Supp. 3d at 530)).

In New Jersey, procedural unconscionability focuses on the circumstances of the negotiation that produced the contested term. *See, e.g.*, *Delta Funding Corp. v. Harris*, 912 A.2d 104, 120 (2006) (Zazzali, J., concurring and dissenting) (citing *Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 921 (N.J. Super. Ct. Ch. Div. 2002)) (listing "inadequacies" such as age, literacy and "lack of sophistication"). Procedural unconscionability will typically exist when a contract reflects "an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Seifi*, 2013 WL 2285339, at *4 (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)); *Delta Funding Corp.*, 912 A.2d at 120; *see also Harris*, 183 F.3d at 181 ("Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." (citing E. ALLAN FARNSWORTH, CONTRACTS § 4.28 (2d ed.1990))).

Here, that Defendants presented the Agreement to Plaintiff virtually is of no moment. *See, e.g., Montgomery v. Bristol-Myers Squibb Co.*, No. 19-19948, 2020 WL 3169373, at *5 (D.N.J. June 15, 2020) ("Plaintiff's electronic signature on the Arbitration Agreement suffices as her assent necessary to create a binding and enforceable contract."). Moreover, Plaintiff cites no cases for the proposition that "small and difficult-to-read type" renders the provisions of an employment agreement—as opposed to a consumer contract—procedurally unconscionable. (*See* Op. Br. at 7– 8). Further still, "Plaintiff was not unfairly denied an opportunity to read the contract or a choice over whether to sign it." *Montgomery*, 2020 WL 3169373, at *6. Indeed, as Defendants argue,

16

the following (bolded and italicized) text proceeded the signature line:

> By selecting, YES, you are entering into a binding legal contract. You have been provided with the opportunity to save and/or print this document so that you may review it with an attorney or other advisor, if you so choose. Only select YES if you have read and understand the terms of this Employment Agreement and are willing to abide by them.

(Ex. A at 12); *see Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008); *HSM Const. Servs., Inc. v. MDC Sys., Inc.*, 239 F. App'x 748, 751 (3d Cir. 2007) ("The parties' objective manifestations control in deciding whether they formed a contract by mutual assent.").

The Court further understands Plaintiff to argue that the Agreement is procedurally unconscionable because it is an adhesion contract—although Plaintiff merely gestures at this argument and does not include any reference to it in Section II.A of his Opposition Brief, which addresses procedural unconscionability. (*See* Opp. Br. at 7–8). As Plaintiff himself acknowledges, "[t]he defense of unconscionability, specifically, calls for a fact-sensitive analysis in each case, even when a contract of adhesion is involved." *Delta Funding Corp.*, 912 A.2d at 111. Courts accordingly consider "the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract." *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 605 A.2d 681, 687 (1992). Here, Plaintiff makes no substantial argument as to the *Rudbart* factors—indeed, neither party so much as cites the case. (*See generally* Mov. Br.; Opp. Br.; Reply Br.). Neither does Plaintiff plead facts in his Complaint from which the Court could discern the parties' relative bargaining positions, the degree of economic compulsion involved, or the public interests affected by the Agreement. (*See generally* Compl.). In sum, as in so many cases before, "[a]lthough the Arbitration Agreement was a contract of adhesion and [p]laintiff [may have] had lesser bargaining power than Defendant, these facts do not make the Agreement unenforceable." *Montgomery*, 2020

WL 3169373, at *6; *see also Martindale*, 800 A.2d at 880 ("Virtually every court that has considered the adhesive effect of arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee.").[5]

> ***Substantive Unconscionability***.   Plaintiff argues that the Arbitration Provision is substantively unconscionable because (i) it does not apply to claims by Defendants against Plaintiff; (ii) it contains a one-year statute of limitations which applies only to Plaintiff and not to Defendants; and (iii) it imposes a unilateral fee-shifting provision. (Opp. Br. at 8–10). Defendants reply that, although the Provision provides mutuality of the waiver of the right to a jury trial, lack of mutuality nevertheless does not make an arbitration agreement unconscionable. (Reply Br. at 6 (citing *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 364 (3d Cir. 2007))).  As to the statute of limitations, Defendants argue that "it is well settled that parties may contractually limit the time for bringing claims, despite a statute of limitations to the contrary" provided that such limitation is reasonable. (*Id*. at 7 (quoting *Melone v. Cryoport Inc.*, No. 23-3243, 2024 U.S. Dist. LEXIS 73519, at *9 (D.N.J. Apr. 23, 2024))).  Moreover, Plaintiff's claims under the New Jersy Conscientious Employee Protection Act ("CEPA") and his claims for defamation and libel all carry a "one-year statute of limitations that is not impacted by the Agreement's one-year contractual

---

[5]    The four *Rudbart* factors—applied to analyze the unconscionability of an adhesion contract—"'focus on procedural *and* substantive aspects of the contract to determine whether the contract is so oppressive, or inconsistent with the vindication of public policy, that it would be unconscionable to permit its enforcement.'" *Shammout v. MSX Int''l RNS, LLC*, No. 23-21563, 2025 WL 957419, at *5 (D.N.J. Mar. 31, 2025), *dismissed*, No. 25-1846, 2025 WL 3079091 (3d Cir. May 8, 2025) (quoting *Rodriguez v. Raymours Furniture Co., Inc.*, 138 A.3d 528, 542 (N.J. 2016)). Courts therefore 'have generally applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability." *Delta Funding Corp.*, 912 A.2d at 111; *see Hubbard v. Comcast Corp.*, No. 18-16090, 2020 WL 4188127, at *7 n.2 (D.N.J. July 21, 2020) (explaining that some decisions in this District have erroneously applied the *Rudbart* factors to the procedural unconscionability analysis only). Even assuming the contract here is, indeed, one of adhesion—a point which Plaintiff has not squarely alleged nor argued—the Court's analysis of unconscionability remains unchanged, as explained both *supra* and *infra*.

18

limitation." (*Id*. (citing Opp. Br. at 9 n.2 ("[T]his contractual limitation did not affect Plaintiff's CEPA claim here because CEPA has a one-year statute of limitations.")))).  Finally, Defendants argue that Plaintiff's contention as to the fee-shifting arrangement also fails: Plaintiff submits no evidence of financial strain despite that he "bears the burden of showing the likelihood of incurring such costs."  (*Id*. at 8 (quoting *Hall v. Treasure Bay Virgin Islands Corp.*, 371 F. App'x 311, 313 (3d Cir. 2010))).

Courts will typically find a contract term to be substantively unconscionable if the term is "excessively disproportionate," involving an "exchange of obligations so one-sided as to shock the court's conscience."  *Delta Funding Corp.*, 912 A.2d at 120 (quoting *Sitogum*, 800 A.2d at 921). "An arbitration agreement cannot be construed as substantively unconscionable where it 'does not alter or limit the rights and remedies available to [a] party in the arbitral forum.'"  *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (quoting *Edwards*, 497 F.3d at 364). Moreover, "a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period."  *Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947).

Here, although the "arbitration provision requires only one side to submit its claims . . . to arbitration," it "does not alter or limit the rights and remedies available to that party in the arbitral forum."  *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 364 (3d Cir. 2007).  Unlike in *Shammout*— which Plaintiff cites for the proposition that the Court may hold a one-year limitations period unconscionable—the time-limitation provision here does not reduce Plaintiff's ability to protect himself in comparison with the one-year statute of limitations periods for CEPA, defamation, and libel claims.  *See generally Shammout v. MSX Int'l RNS, LLC*, No. 23-21563, 2025 WL 957419

(D.N.J. Mar. 31, 2025), *dismissed*, No. 25-1846, 2025 WL 3079091 (3d Cir. May 8, 2025).

Indeed, as Defendants argue, those limitations periods are the same.  (Reply Br. at 7).  As for

Plaintiff's arguments regarding fee shifting, "[a] party seeking to 'invalidate an arbitration

agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of

showing the likelihood of incurring such costs.'"  *Hall v. Treasure Bay Virgin Islands Corp.*, 371

F. App'x 311, 313 (3d Cir. 2010) (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91

(2000)).  To meet this burden, Plaintiff must "(1) come forward with some evidence to show the

projected fees that would apply to their specific arbitrations, and (2) show the party's inability to

pay those costs."  *Id.*  (first citing *Parilla v. IAP Worldwide Serv.*, 368 F.3d 269, 283–85 (3d Cir.

2004); then citing *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 268–69 (3d Cir. 2003)).  Plaintiff

has done neither.   The Court thus declines hold the Arbitration Provision substantively

unconscionable on the basis that arbitration would be "prohibitively expensive" for Plaintiff.[6]

The out-of-District case that Plaintiff primarily relies upon, *Griffen*, likewise does not

support his substantive unconscionability argument.  There, the court wrote:

> For instance, an arbitration provision is substantively
> unconscionable when the clause severely restricts discovery for the
> weaker party, places the burden of costs on the weaker party, limits

---

[6]      "The Third Circuit has recognized that discovery on this question is often necessary for a plaintiff to even have the possibility of making the relevant showing [of prohibitive expense]." *See Robbins v. Playhouse Lounge*, No. 19-8387, 2021 WL 2525709, at *10 (D.N.J. June 21, 2021).  Many Courts in this District, however, have "declined to [order limited discovery on the issue of whether a fee-shifting provision renders an arbitration provision cost prohibitive] without the plaintiff having put forward some initial evidence, generally in the form of a separate affidavit." *Id*.  Here, Plaintiff has not sufficiently raised this concern.  He has neither put forward a specific affidavit outlining his ability to pay, nor argued that the cost of arbitration would be particularly prohibitive to him.  (*See generally* Compl.; Opp. Br.); *see also  Montgomery v. Bristol-Myers Squibb Co.*, No. 19-19948, 2020 WL 3169373, at *8 (D.N.J. June 15, 2020) ("Plaintiff's unsupported conclusion of unaffordability has failed to satisfy that burden."); *Brown v. Trueblue, Inc.*, No. 10-0514, 2012 WL 1268644, at *8 (M.D. Pa. Apr. 16, 2012) (declining to order discovery because plaintiff failed to put forward an affidavit of her financial constraints or estimates of arbitration costs); *contra Tharpe v. Securitas Sec. Servs. USA, Inc.*, No. 20-13267, 2021 WL 717362 (D.N.J. Feb. 24, 2021) (ordering limited discovery where the Plaintiff failed to submit an affidavit of his financial constraints, but his complaint gave rise to an inference that he has been unemployed since his termination and his opposition confirmed that he lost his job, income, and "financial footing.").  Moreover, as discussed thoroughly *infra*, the parties agree that "there is no discovery needed relating to the question of arbitrability."  (*See* D.E. No. 26).

20

> the remedies available to the weaker party, limits the period in which the weaker party may bring a claim, raises the burden of proof of claims higher than the burden of proof in a judicial forum, or provides only the stronger party with judicial recourse.

*Griffen v. Alpha Phi Alpha, Inc.*, No. 06-1735, 2007 WL 707364, at *6 (E.D. Pa. Mar. 2, 2007). None of those hallmarks exist here. The Arbitration Provision at issue has no provisions relating to discovery, does not limit the remedies available to Plaintiff, does not raise the burden of proof for any claim, and does not limit the period in which Plaintiff may bring the claims at issue here. While it does provide for fee-shifting and exempts "claims by the Company against Employee" from the Arbitration Provision, as explained above, those provisions, alone, do not render the Agreement unconscionable. (Ex. A at 9–10).

### E.    Public Policy

Finally, Plaintiff argues that "compelling arbitration of Plaintiff's CEPA whistleblower claim would violate New Jersey's strong public policy." (Opp. Br. at 10). Defendants respond that "the Third Circuit has . . . affirmed a motion to compel a CEPA claim to arbitration." (Reply Br. at 9 (citing *ACE AM. Ins. Co. v. Guerriero*, 738 F. App'x 72, 79 (3d Cir. 2018))). In their Moving Brief, Defendants additionally cite to *Curtis v. Cellco P'ship*, 413 N.J. Super. 26, 35–37 (App. Div. 2010) *certif. denied*, 203 N.J. 94 (2010), wherein the Supreme Court of New Jersey upheld arbitration of "all statutory claims arising out of the relationship" and noting that "[c]ourts have determined arbitration is an appropriate forum to vindicate statutory rights asserted under: . . . the Conscientious Employee Protection Act." (Mov. Br. at 9–10); *see also ACE*, 738 F. App'x at 79 ("Under the terms of the Employment Dispute Arbitration Policy, [plaintiff] specifically agreed to arbitrate claims regarding 'whistle blowing,' 'termination of employment[,]' and 'the New Jersey Conscientious Employee Protection Act.'").

Plaintiff cites no cases for the proposition that an arbitration provision which compels arbitration for a CEPA claim must be held void as a matter of public policy. (*See generally* Opp. Br.). To the contrary, the Federal Arbitration Act commands "a strong federal policy" of resolving parties' disputes through arbitration. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) (*en banc*) (citation modified); *see also Bleumer v. Parkway Ins. Co.*, 649 A.2d 913, 925 (N.J. Super. Ct. Law. Div. 1994) ("[S]tatutory claims, such as the CEPA claim here involved, are subject to arbitration under an arbitration clause in a private employment agreement subject to the FAA, providing, of course, that the agreement contemplates arbitration of such statutory claims."). The Court declines to part with the "strong federal policy" compelled by the Federal Arbitration Act and will not hold that arbitration provisions which apply to CEPA claims are *per se* void, as Plaintiff appears to urge it do.

## IV.    CONCLUSION

Plaintiff signed a valid and enforceable Agreement that binds him to arbitrate any claims arising from his employment at and termination from Defendants. The Court therefore **GRANTS** Defendants' Motion to stay this action pending arbitration. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
